IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

APL CO. PTE., LTD. and AMERICAN
PRESIDENT LINES, LTD.,

    Plaintiffs,

  v.

CNJ INTERNATIONAL, INC. and
JOON WOO RYU,

    Defendants.
                               /

No. C 12-04758 WHA

**ORDER GRANTING
PLAINTIFFS' MOTION
FOR DEFAULT JUDGMENT**

### INTRODUCTION

In this action for breach of a maritime contract, plaintiffs move for entry of default judgment. For the following reasons, the motion is **GRANTED**.

### STATEMENT

Plaintiffs APL Co. Pte., Ltd., a Singapore shipping company, and American President Lines, Ltd., a Delaware company (collectively "APL") allege the following facts. Defendants CNJ International, Inc, and its president, Joon Woo Ryu, share identity of interest and are domiciled in New Jersey. In May 2008, the parties entered a service contract under which plaintiff agreed to ship CNJ's raw cotton from the United States to various ports abroad. CNJ agreed to ship a minimum of 25 "freight equivalent units" by the time the contract expired in November 2008. The agreement provided for liquidated damages. The relevant clause — a "dead freight" provision — called for CNJ to pay $350 per freight equivalent unit for any shortfall. Upon reconciling its accounts after the contract expired, plaintiff discovered that CNJ

had not shipped any units. CNJ was therefore liable to plaintiff for 25 units of dead freight, or $8,750 (25 x $350 = $8,750). Plaintiff alleges it sent more than one invoice for this amount, and although CNJ acknowledged receipt of at least one of these, it never paid its bill (Compl. ¶¶ 3–19, 27).

Nor has CNJ responded to this lawsuit. The complaint and summons were properly served and proper proof of service was filed (Dkt. Nos. 5 and 6). Plaintiff alleges breach of maritime contract, open account, and a common count of services performed. Plaintiff seeks recovery totaling $11,260, consisting of: (1) $8,750 in dead freight; (2) $2,160 in attorney's fees; and (3) $350 in costs.

CNJ and Ryu have been served with all filings to date (*see* Dkt. Nos. 11, 16, 17, 22 and 25). The clerk entered default against both defendants in November 2012. The instant motion for default judgment was filed in January 2013 with a hearing noticed for February 2013. Defendants did not appear or oppose.

**ANALYSIS**

1.  **DEFAULT JUDGMENT.**

It is preferable to decide cases on their merits, but when a party refuses to litigate and default has been entered, Rule 55(b)(2) allows a district court, in its discretion, to enter default judgment against a defendant. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Several factors enter into a court's discretionary decision whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Rule 54(c) governs the scope of relief granted, which in the case of a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

As to the merits, after entry of default, well-pled allegations in the complaint regarding liability are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). As to sufficiency, the complaint adequately alleges breach

of a maritime contract: it includes the contract's terms, CNJ's breach in failing to ship the minimum required freight units, and the agreed value of the damages. Finally, as to the possibility of a dispute concerning material facts, defendant never answered or otherwise responded to the complaint, and the facts are easily verified by reference to the contract and plaintiff's records. Consequently, there is no dispute now, nor is there likely to be one in the future. *Eitel* factors two, three, and five favor entry of default judgment. The remaining *Eitel* factors, as explained below, also favor default judgment.

*First*, plaintiff would be prejudiced if default judgment were not granted, because plaintiff would otherwise be without a remedy.

*Second*, this action is concerned with a moderate sum. While $11,260 is a not-insignificant amount, it is a far cry from the $2,900,000 at issue in *Eitel*. *See* 782 F.2d at 1472.

*Third*, there is no indication that CNJ's failure to respond was the result of excusable neglect. Plaintiff alleges CNJ was sent more than one invoice for the dead freight owing and never responded. Furthermore, this action was filed in September 2012, and CNJ was properly served all the relevant documents but has made no response.

*Fourth*, federal policy certainly favors decisions on the merits. But where, as here, a defendant refuses to litigate, Rule 55(b)(2) allows entry of a default judgment.

Following consideration of the *Eitel* factors, this order determines that entry of default judgment is warranted.

**2.    DETERMINATION OF RELIEF.**

Plaintiff seeks recovery totaling $11,260, consisting of: (1) $8,750 in dead freight; (2) $2,160 in attorney's fees; and (3) $350 in costs. These amounts are supported by sworn declarations and exhibits (Dkt Nos. 19 and 20). The dead freight terms are adequately set forth in the contract's provisions, and the amount owing was properly calculated thereunder (Dkt. 19). The requested attorney's fees and costs are reasonable and well-supported by Attorney de Langis's declaration that plaintiff has compensated him in the amount of approximately $2160 for the twelve hours or so he has spent on the matter (Dkt. No. 20). Finally, plaintiff asks

for $350 in order to compensate Attorney de Langis for the cost of filing this suit (*id.*). In addition, the contract explicitly provided for the non-prevailing party to litigation to pay reasonable attorney's fees and costs (Dkt. 19). Considering the above, plaintiff's requests for dead freight, attorney's fees, and costs are **GRANTED** in the amount of $11,260.

### 3. IDENTITY OF INTEREST.

Plaintiff alleges identity of interest between the corporation CNJ and its president, Ryu. In an admiralty action, district courts examining an alter-ego allegation apply federal common law, which allows a court to pierce the corporate veil where (1) an individual uses a corporation to perpetrate a fraud, or (2) he so dominates and disregards his alter ego's corporate form that the alter-ego corporation essentially carried on his personal business instead of its own. That an individual is a corporation's sole owner does not, by itself, justify piercing the corporate veil. *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997); *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980). "Bare assertions of alter ego status, without more," fail to prove identity of interest. *Stevedoring Servs. of Am. v. Ancora Transp., N.V.*, 59 F.3d 879, 883 (9th Cir. 1995).

Plaintiff's allegation that Ryu is the alter ego of CNJ is supported by nothing more than bare assertion (Compl. ¶¶ 7–10). Plaintiff provides no facts to bolster this conclusion, and alleging that Ryu is CNJ's sole owner is insufficient. Nor does plaintiff renew this allegation in its motion for default judgment or in its proposed order. The contract is between plaintiff and CNJ only, not Ryu, and the invoice was addressed to CNJ (Dkt. Nos. 18 and 21). Therefore, on this record, this order determines that CNJ alone is liable for the judgment.

### CONCLUSION

For the above reasons, plaintiff's motion for default judgment against both defendants is **GRANTED**. Plaintiff may recover a total of **$11,260** from defendant CNJ International, Inc.

**IT IS SO ORDERED.**

Dated: February 14, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE